FILED
2025 May-30  PM 04:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ANNA AMADOR, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.:** |
| | ) | |
| ADDICTION & MENTAL HEALTH | ) | |
| SERVICES, LLC (D/B/A BRADFORD | ) | **JURY DEMAND** |
| HEALTH SERVICES), | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Anna Amador (hereinafter, "Amador"), by and through counsel, and files this Complaint against Defendant, Addiction & Mental Health Services, LLC d/b/a Bradford Health Services (hereinafter, "Bradford"), for the reasons set forth and stated as follows:

### PARTIES

1. Plaintiff Anna Amador ("Amador") is a female adult, age fifty-six (56), residing in Warrior, Jefferson County, Alabama, who is a Christian and practices Christianity.

2. Defendant Addiction & Mental Health Services, LLC d/b/a Bradford Health Services ("Bradford") is a Delaware limited liability company headquartered in Birmingham, Jefferson County, Alabama, that operates various inpatient and outpatient addiction treatment facilities, including Bradford at Warrior located at 1189 Allbritton Road,

1

Warrior, Jefferson County, Alabama 35180 where the Plaintiff was previously employed and where the alleged invidious conduct made the basis of this action took place.

**JURISDICTION AND VENUE**

3. Because Amador brings various claims of employment discrimination against Bradford arising under *Title VII* of the *Civil Rights Act of 1964*, as amended, *42 U.S.C. § 2000e, et seq.* ("*Title VII*"), and the *Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq.* ("*ADEA*") for alleged discriminatory conduct that occurred in Warrior, Jefferson County, Alabama, this Honorable Court maintains jurisdiction over this matter pursuant to *28 U.S.C. §§ 1331 & 1343*, and venue is proper pursuant to *28 U.S.C. § 1391*.

**FACTUAL BACKGROUND**

4. Amador was hired by Bradford as a Program Service Aid at Bradford's Warrior facility in October 2023. During the interview process, she informed both of her superiors, Bri and Charles, that she is a Christian and a Bible teacher and graduated Bible college. She believed that her faith and training could be relevant to the types of jobs she might perform at an addiction recovery facility.  During her training, Amador was informed that she can pray with patients so long as prayer is first requested by the patient. Amador's sincerely held Christian faith informs her that the God of the Bible can transform lives, and that faith and prayer can facilitate addiction recovery.

5. Shortly after starting in this position, Amador was asked by a Bradford patient to pray with him for his wife, which she did.  Subsequently, Amador reprimanded this same patient for failing to perform his duties as a house leader in one of the cottages where Amador assisted in patient recovery activities as part of her job duties.   Shortly thereafter, this patient assaulted Amador in her office and threatened to report Amador for praying with him in

retaliation for the reprimand. When Amador reported this incident to her supervisor, Bri, Amador received a write-up for praying. Bri told Amador that, despite being frozen with fear during the assault, she should have called a "code orange." The patient followed through with his threats to report Amador for praying despite the patient initiating the prayer request, and the patient recruited others from his cottage to join in the complaint.

6. Around December 2023 and January 2024, Amador applied to transfer to a Patient Account Representative position at Bradford's Warrior facility. When disclosing that she was a Christian and a Bible teacher who held a Bible college certificate to the interviewer, Brittnay, Amador was met with immediate coldness and hostility. Amador subsequently learned that a much younger and less qualified employee was selected for the position, and that Brittnay prefers younger employees.

7. Amador subsequently underwent training and classes to become a recovery coach. After she finished the program, she was promoted to Behavioral Health Tech followed by another promotion to Care Transition Coordinator at Bradford's Warrior facility in June 2024.

8. As part of her duties as Care Transition Coordinator, Amador was responsible for managing the discharge plan and calendar for the two female patient cottages and one male patient cottage for patients leaving Bradford's Warrior facility and moving into partial hospitalization programs or intense outpatient programs at other facilities. Patients at Bradford were provided the option to choose among secular and faith-based Christian facilities for their next level of recovery, and Amador would assist patients with further faith-based treatment whenever a patient would desire to seek such treatment. This was a time-intensive position often requiring Amador to work overtime and skip her thirty-minute lunch break as she often had to cover work for slacking co-employees in this role.

9. Also, as part of her duties as Care Transition Coordinator, Amador was required to attend twice-daily staff meetings. Brittnay, who previously interviewed and passed over Amador for the Patient Account Representative position was present at these meetings and continued her hostilities towards Amador. During one such meeting in September 2024, Amador happened to take a seat next to Brittnay, and Brittnay commanded Amador to "move, and don't sit next to me." Amador's supervisor Riley was close with Brittnay, and Amador noticed that she was increasingly being alienated and excluded from conversations during these staff meetings. During these meetings Bradford management officials and supervisors would voice disdain and belittlement for faith-based long-term programs, despite those programs being listed as treatment options for patients leaving Bradford's Warrior facility, and to which Amador would, as often as possible, assist patients with transition whenever patients expressed preferences for ongoing faith-based recovery.

10. A few months into her Care Transition Coordinator position, a young male employee named Joe began training for the Care Transition Coordinator position held by Amador's young female co-employee, Jessica. Joe's job duties included handling the discharge plan and calendars for three of the four male patient cottages at Bradford's Warrior facility. However, Joe would leave work for extended periods of time, and like Amador's other young co-employee Jessica, studied and did homework on the job for a postgraduate degree. Joe would also take extended lunch breaks sometimes lasting up to ninety (90) minutes. During Joe's absences, Amador was forced to dedicate significant time and attention dealing with Joe's male patient load on top of her existing female and male patient load. Moreover, Joe would modify the discharge calendars without consulting with Amador, creating errors and inaccuracies for which Amador, rather than Joe, was blamed.

4

11. Indeed, Amador's much younger co-employee, Joe, did not receive reprimands for his extended absences and lunch breaks, doing homework on the job, or his calendaring errors. Furthermore, her younger counterpart was also a self-described "agnostic," who was welcomed by Bradford supervisors and officials in staff meetings while Amador continued to be excluded and alienated.

12.  Amador was terminated on October 30, 2024.  On this day, her supervisor Riley had been absent for several days due to a funeral, and her younger co-worker had been out of the office most of the day leaving Amador to deal with a heavy patient load that included time-intensive homeless patients and no lunch break.  She was called into a meeting with lead counselors Charles and Ellie as well as Bradford human resources employee Melissa where she was, once again, unduly blamed for calendar issues in addition to being maliciously accused of making negative comments about members of the LGBTQ community. Amador, who has LGBTQ family members whom she deeply loves and cares for, and about whom she would never speak negatively, strenuously denies these allegations.

13. At the time of her termination, Amador had not been paid for work she performed for Bradford during the month of October 2024, and she still has not been compensated for that work.  Amador believes that had it not been for her sincerely held Christian faith and/or her age (over forty), she would not have been mistreated, falsely maligned, and terminated by Bradford officials.

14. Bradford's termination of Amador's employment because of her Christian faith and/or age has been a source of severe turmoil and distress for the Plaintiff and her family.  Because Amador is the sole breadwinner for her husband and daughter, Bradford officials' false accusations maligning the quality of Amador's work ethic and her love for members of the

LGBTQ community and the resultant loss of income has caused humiliation and ongoing tension and damage to her household relationships.

15. Amador timely filed a Charge of Discrimination with the EEOC on February 27, 2025, where she asserted that Bradford invidiously terminated her employment because of her Christian faith and age.

16. Amador was provided with a Notice of Right to Sue by the EEOC on March 3, 2025. Accordingly, Amador has exhausted her administrative remedies, and the filing of this lawsuit is timely and appropriate in accordance with *42 U.S.C. § 2000e-5 & 29 U.S.C. § 626(d)*.

## COUNT I
## Unlawful Disparate Treatment of the Plaintiff because of the Plaintiff's Christian Faith.

17. Amador readopts and reasserts the allegations of Paragraphs 1 through 16 of her Complaint as if fully set out herein.

18. Amador is a Christian whose sincerely held faith informs her that the God of the Bible can help transform the lives of people suffering from addiction through faith and prayer.  At all relevant times Amador was qualified to perform all the roles she held at Bradford, and she took great pride and care in performing those roles with 100% effort and excellence, often working overtime to pick up the slack of her co-employees while meeting the demands of her own patient load.

19. During interviews for various positions and promotions within Bradford's Warrior facility, Amador shared with supervisory employees such as Charles and Bri that she was a Christian and Bible teacher with a Bible college certificate when discussing what she believed to be relevant qualifications for the positions she held.  While certain employees like Brittnay immediately made their disdain for Amador after these revelations obvious

throughout the course of Amador's employment during staff meetings, other employees like Joe, Brandon, Melissa, and Riley increasingly alienated Amador during staff meetings after observing that she truly believes in the power of Christian prayer and did not hesitate with assisting patients desiring to transfer to faith-based programs after completing addiction recovery efforts at Bradford's Warrior facility. As such, these supervisory employees treated Amador more critically and less favorably than her agnostic co-employees, who were not reprimanded for attendance issues, doing homework on-the-job, errors in calendaring, and leaving Amador with increased patient responsibilities. Ultimately, these supervisory officials' disdain for the Plaintiff because of her sincerely held Christian beliefs culminated in their leveling of false and unjust accusations against Amador that resulted in her employment termination from Bradford on October 30, 2024.

20. Accordingly, had it not been for Amador's sincerely held Christian faith, her employment would not have been terminated by Bradford on October 30, 2024.

## COUNT II
### Unlawful Disparate Treatment of the Plaintiff because of the Plaintiff's Age (Over Forty).

21. Amador readopts and reasserts the allegations of Paragraphs 1 through 20 of her Complaint as if fully set out herein.

22. Amador is fifty-six years of age, and, at all relevant times, was qualified to perform all the roles she held at Bradford where she took great pride and care in performing those roles with 100% effort and excellence, often working overtime to pick up the slack of her co-employees while meeting the demands of her own patient load.

23. When applying for transfers and promotions at Bradford's Warrior facility, Amador observed that supervisory employees like Brittnay preferred to hire very young employees. Indeed, for the Patient Account Representative position that Amador applied for, Brittnay

7

passed Amador over in favor of a much younger and less qualified employee. Amador continued to observe Bradford officials' preferences and favoritism directed at younger employees up to her last day of employment where her much younger coworkers like Joe and Jessica were not reprimanded or penalized by Bradford officials for calendaring issues for which Amador received the undue blame, nor were they reprimanded for doing homework on the job or taking excessive lunch breaks and absences. Furthermore, younger employees like Joe were welcomed into the fold during staff meetings while Amador, age fifty-six, was increasingly alienated and excluded up to her October 30, 2024 termination.

24. Accordingly, had it not been for Amador's age, over forty, which she observed was disfavored by Bradford supervisory employees, she believes she would not have been unfairly blamed for the errors of her younger coworkers, falsely maligned as having made negative comments about members of the LGBTQ community, and ultimately terminated on October 30, 2024.

### DAMAGES & PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Amador demands the following relief:

25. Back pay for the period after Amador was terminated by Bradford until she was able to find subsequent employment.

26. Compensatory damages for mental turmoil, distress, embarrassment, and humiliation after being falsely maligned by Bradford supervisory officials and terminated on October 30, 2024.

27. Punitive damages for the intentional discrimination by Bradford supervisors who mistreated the Plaintiff because of her sincerely held Christian faith.

28. Special damages for costs and out-of-pocket expenses.

29. Reasonable attorney's fees and costs

30. Any other form of relief that justice requires.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted this the 30th day of May 2025.

Daniel S. Flickinger,
P.O. Box 36956
Birmingham, AL 35236
dflick@gmail.com
205-470-6997
Attorney for Plaintiff Anna Amador

**JURY TRIAL DEMANDED ON ALL TRIABLE ISSUES**

OF COUNSEL

9